IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


JUANITA GRACE BRUCE,

           Plaintiff,

vs.                                    Case No. 17-2068-SAC


NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,[1]

           Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

## I.  General legal standards

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984

---

[1] On January 20, 2017, Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security.

(10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in

substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform

their previous work, they are determined not to be disabled.   If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).   At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence.  Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On September 11, 2015, administrative law judge (ALJ) Alison K. Brookins issued her decision (R. at 14-27).  Plaintiff alleges that she has been disabled since March 22, 2013 (R. at

14).  Plaintiff is insured for disability insurance benefits through June 30, 2018 (R. at 16).  At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date (R. at 16).  At step two, the ALJ found that plaintiff has severe impairments (R. at 17).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 17).  After determining plaintiff's RFC (R. at 19-20), the ALJ found at step four that plaintiff is unable to perform past relevant work (R. at 25).  At step five, the ALJ found that plaintiff could perform other work that exists in significant numbers in the national economy (R. at 26).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 27).

**III.  Did the ALJ's limitation of plaintiff to simple work adequately account for a moderate limitation in concentration, persistence, and pace?**

At step three, the ALJ found that plaintiff had moderate difficulties in concentration, persistence, or pace,[2] and moderate difficulties in social functioning (R. at 19).  In her

---

[2] According to 20 C.F.R. § 404.1520a(c)(3,4), the Commissioner rates a claimant's mental limitations in four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  In the first three functional areas a five point-scale is used: none, mild, moderate, marked, and extreme.  In the fourth functional area, a four-point scale is used: none, one or two, three, four or more

The psychiatric review technique findings described in 20 C.F.R. § 404.1520a are not an RFC assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories set out in 20 C.F.R. § 404.1520a.  SSR 96-8p, 1996 WL 374184 at *4.  In assessing RFC, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe."

RFC findings, the ALJ stated that plaintiff is able to understand, remember, use judgment, and make decisions for simple and intermediate instructions and tasks that do not require more than occasional public interaction (R. at 20).

On March 6, 2014, Dr. Schulman, a non-examining state agency medical source, reviewed the record and found that plaintiff had moderate difficulties in maintaining concentration, persistence, or pace (R. at 70). Dr. Schulman indicated in his RFC that plaintiff is moderately limited in her ability to understand, remember, and carry out detailed instructions, and is moderately limited in her ability to maintain attention and concentration for extended periods (R. at 72-73). Dr. Schulman then concluded that plaintiff is able to understand, remember, use judgement, and make decisions for intermediate instructions and tasks (R. at 72), and can attend, concentrate, and maintain pace and persistence for this level of activity (R. at 73). On July 2, 2014, Dr. Blum, a non-examining medical source, reviewed the record. He also found that plaintiff had moderate difficulties in maintaining, concentration, persistence, or pace (R. at 96). He made the same RFC findings as those noted above for Dr. Schulman; he also found a moderate limitation in plaintiff's ability to interact appropriately with the general public (R. at 99, 100). The ALJ accorded considerable weight to their opinions (R. at 25), and

the ALJ's RFC and step three findings adopted their opinions as noted above.  At step five, the ALJ found that plaintiff could perform three "unskilled" jobs that exist in significant numbers in the national economy (R. at 26, 59).  All three unskilled jobs have a SVP (specific vocational preparation) of level 2. 1991 WL 679524, 679616, 679631.

Plaintiff argues that limiting plaintiff to simple and intermediate work fails to account for plaintiff's moderate limitations in concentration, persistence, or pace.  However, in the case of Smith v. Colvin, 821 F.3d 1264, 1269 (10th Cir. 2016), the court held that an ALJ can account for moderate mental limitations by limiting plaintiff to particular kinds of work activity, including a limitation to simple tasks.  See also Lee v. Colvin, 631 Fed. Appx. 538, 540-542 (10th Cir. Nov. 12, 2015)(same; Smith opinion indicated that Lee finding was persuasive, Smith, 821 F.3d at 1269).

In the case of Nelson v. Colvin, 655 Fed. Appx. 626, 628-629 (10th Cir. July 12, 2016), Dr. Taber (in his Section I findings) found that claimant's limitations included a moderate limitation in her ability to maintain attention and concentration for extended periods, and marked limitations in her ability to understand, remember and carry out detailed instructions.  Dr. Taber's Section III narrative then limited plaintiff to carrying out simple instructions.  The ALJ's RFC

7

findings included a limitation to simple instructions.  The
court held that Dr. Taber's Section III narrative adequately
incorporated the limitations she found in Section I.  The court
further held that by limiting the claimant to unskilled work,
the ALJ effectively accounted for all the limitations noted in
Section I of Dr. Taber's evaluation.

In Vigil v. Colvin, 805 F.3d 1199, 1203-1204 (10th Cir.
2015), a person with moderate difficulties in concentration,
persistence, or pace was limited by the ALJ to unskilled work
with an SVP (specific vocational preparation) of 1 or 2.  The
court held that limiting plaintiff to an SVP of 1 or 2
adequately took into account a moderate limitation in
concentration, persistence, or pace.

Dr. Schulman and Dr. Blum (in Section I) indicated that
plaintiff had moderate limitations in her ability to understand,
remember, and carry out detailed instructions, and in her
ability to maintain attention and concentration for extended
periods.  Their Section III narrative findings limited plaintiff
to intermediate instructions and tasks.  The ALJ, in her RFC
findings, limited plaintiff to simple and intermediate
instructions and tasks.[3]  The only jobs identified by the

---

[3] Plaintiff argues in her brief that the ALJ's RFC limitation to simple and intermediate instructions is self-contradictory (Doc. 13 at 12).  However, the ALJ expressly relied on Dr. Schulman and Dr. Blum, who opined that plaintiff could perform intermediate instructions and tasks.  The court finds nothing self-contradictory in the ALJ's findings.  The case of Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005), cited by plaintiff, does not address limitations to intermediate instructions and tasks.

vocational expert (VE) and the ALJ as jobs that plaintiff could perform were unskilled jobs with an SVP of 2.  The court finds that the above cases control on the facts of this case.  As the court indicated in Lee, the Section III narrative, which the ALJ incorporated in his RFC assessment, reflected, explained, accounted for, and delimited each of the moderate limitations expressed in Section I.  Lee, 631 Fed. Appx. at 541-542. Furthermore, as the court held in Nelson, by limiting plaintiff to unskilled work, the ALJ effectively accounted for all the limitations noted in Section I of the evaluations.  Finally, as the court held in Vigil, a moderate limitation in concentration, persistence, or pace is accounted for by limiting him to unskilled work with an SVP of only one or two.

**IV.  Did the ALJ err in the relative weight accorded to the medical opinion evidence?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).

When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around.  Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations.  If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources.  Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.  Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion.  Robinson v.

Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating

source opinion not entitled to controlling weight is still

entitled to deference and must be weighed using all of the

following factors:

(1) the length of the treatment relationship and the frequency
of examination;
(2) the nature and extent of the treatment relationship,
including the treatment provided and the kind of examination or
testing performed;
(3) the degree to which the physician's opinion is supported by
relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area
upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to
support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

     After considering the above factors, the ALJ must give good

reasons in his/her decision for the weight he/she ultimately

assigns the opinion.  If the ALJ rejects the opinion completely,

he/she must then give specific, legitimate reasons for doing so.

Watkins, 350 F.3d at 1301.

     Plaintiff argues that the ALJ erred by relying on the non-

examining medical sources (Dr. Schulman and Dr. Blum) in making

her mental RFC findings, and in discounting the opinions of

plaintiff's treatment provider, ARNP (advanced registered nurse

practitioner) Garton.  As this court has previously noted, the

ALJ gave considerable weight to the opinions of Dr. Schulman and

Dr. Blum.

ARNP Garton filled out two mental capacity assessment forms. The first, dated November 27, 2013, states that plaintiff has marked limitations in 9 categories, and an extreme limitation in 1 category (R. at 421-423). The second, dated October 30, 2014, and also signed by Dr. Ibarra, states that plaintiff has marked limitations in 7 categories and extreme limitations in 6 categories (R. at 539-541). The ALJ found that her opinions were only entitled to limited weight due to the lack of support for the more extreme limitations or restrictions. The ALJ stated that the treatment notes indicate that plaintiff's attention, concentration, and memory has been generally intact or adequate. Her GAF scores have generally been in the range consistent with moderate symptoms with only a few exceptions. The ALJ noted that plaintiff was pursuing further education through online courses. The ALJ concluded that this evidence does not support the marked and extreme limitations assessed by ARNP Garton on the form check boxes (R. at 24).

The ALJ gave greater weight to the opinion of Dr. Blum, who reviewed the first assessment from ARNP Garton. Dr. Blum stated that there is no detail describing how the symptoms support the opinions of marked and extreme limitations (R. at 97).

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395

F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d
903, 905, 908, 909 (10th Cir. 2002).  Although the court will
not reweigh the evidence, the conclusions reached by the ALJ
must be reasonable and consistent with the evidence.  See Glenn
v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must
affirm if, considering the evidence as a whole, there is
sufficient evidence which a reasonable mind might accept as
adequate to support a conclusion).  The court can only review
the sufficiency of the evidence.  Although the evidence may
support a contrary finding, the court cannot displace the
agency's choice between two fairly conflicting views, even
though the court may have justifiably made a different choice
had the matter been before it de novo.  Oldham v. Astrue, 509
F.3d 1254, 1257-1258 (10th Cir. 2007).

     The court will not reweigh the evidence.  The ALJ set out
in some detail her reasons for discounting the opinions of ARNP
Garton.  The ALJ set out in further detail plaintiff's mental
treatment records, including the moderate GAF scores noted in
the medical records (R. at 21-22).  Dr. Blum's report indicates
that there is no detail in ARNP Garton's report describing how
plaintiff's symptoms support the opinions of ARNP Garton that
plaintiff has marked and extreme limitations.  The court finds
that there is sufficient evidence which a reasonable mind might
accept as adequate to give greater weight to the opinions of Dr.

Schulman and Dr. Blum, and to discount the opinions of ARNP Garton and Dr. Ibarra.

**V.  Did the ALJ err by failing to develop the administrative record in regards to plaintiff's physical RFC findings?**

Plaintiff argues that the ALJ erred by not obtaining additional medical evidence regarding plaintiff's physical impairments, and that insufficient evidence supports the ALJ's physical RFC findings.  In general, the ALJ limited plaintiff to sedentary work, with some additional limitations (R. at 19-20). The ALJ rejected the opinion of Dr. Geis, a non-examining consultative physician, who found that plaintiff's physical limitations were non-severe.  The ALJ relied on the evidence of diabetes with neuropathy and degenerative joint disease of the left knee, obesity and hypertension to find that plaintiff is limited to a range of sedentary work (R. at 24).  However, the ALJ did not rely on medical opinion evidence in making her physical RFC findings.

In a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development. In the absence of such a request by counsel, the court will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record. Hawkins v. Chater, 113 F.3d 1162, 1166-1168, 1169 (10th Cir. 1997; see Madrid v. Barnhart, 447 F.3d 788, 791-792 (10th Cir.

2006)(where additional tests are required to explain a diagnosis already in the record, resort to a consultative examination may be necessary).

Plaintiff did not request a consultative examination, and at the hearing, counsel indicated that all the information or medical records they had sought were in the record for this case (R. at 39-41). Although the ALJ has a duty to develop the record, such a duty does not permit a claimant, through counsel, to state that the record is complete, and then fault the ALJ for not seeking additional medical evidence. The court will not ordinarily reverse or remand for failure to develop the record when a claimant is represented by counsel who affirmatively submits to the ALJ that the record is complete, especially when any missing records are not obvious from the administrative record or otherwise brought to the attention of the ALJ. Maes v. Astrue, 522 F.3d 1093, 1097 (10th Cir. 2008); see Branum v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004).

Furthermore, an exact correspondence between a medical opinion and the RFC is not required. In reaching his RFC determination, an ALJ is permitted, and indeed required, to rely on all of the record evidence, including but not limited to medical opinions in the file. Wells v. Colvin, 727 F.3d 1061, 1071-1072 (10th Cir. 2013). In addition, the ALJ is allowed to engage in less extensive analysis where none of the record

evidence conflicts with the ALJ's conclusion that plaintiff can perform work at a certain exertional level.  Wall v. Astrue, 561 F.3d 1048, 1068 (10th Cir. 2009); Howard v. Barnhart, 379 F.3d 945, 947 (10th Cir. 2004).  As in Wall and Howard, the ALJ in this case discussed the relevant medical evidence in some detail regarding plaintiff's physical limitations (R. at 20-21, 24).  Plaintiff fails to cite to any medical evidence indicating that plaintiff cannot perform sedentary work with the other limitations set forth in the ALJ's RFC findings, or any medical evidence that she has limitations not included in the ALJ's RFC findings.

In conclusion, the court finds that plaintiff failed to establish the need for a consultative examination, or the need to seek other medical records.  As noted above, plaintiff's counsel did not request a consultative examination, and stated that the record was complete.  Plaintiff fails to cite to any evidence in the record that would trigger a duty by the ALJ to recontact a medical source to supplement or clarify the evidence.  Plaintiff argues that the ALJ should have inquired into the extent of Dr. Ibarra's treatment records.  However, as was the case with Dr. Kimball in Maes, 522 F.3d at 1097, any missing records from Dr. Ibarra were not obvious from the administrative record or otherwise brought to the attention of the ALJ, and counsel indicated the record was complete.

16

Therefore, the ALJ did not have a duty to obtain any other records from Dr. Ibarra which may have existed.

This case is distinguishable from the court's ruling regarding claimant's mental impairment in Maes, 522 F.3d at 1097-1098.  The ALJ noted that the record showed that Ms. Maes was prescribed medication used to treat depression, but the record did not contain evidence demonstrating that Ms. Maes was specifically diagnosed with or treated for depression or another mental condition.  Based on this lack of evidence, the ALJ determined that Ms. Maes was not disabled during the relevant period.  The court held that this evidence was an inadequate basis for a determination of plaintiff's disability.  The court stated that the medication could have been prescribed because Ms. Maes was suffering from a severe mental impairment, or it could have been prescribed for a mild condition.  Thus, the regulations required the ALJ to seek additional available records that may clarify the extent of the alleged disability. Without that clarification, the court could not say that the ALJ's determination was supported by substantial evidence.  In the case before the court, the ALJ was not relying on an absence of evidence from Dr. Ibarra or others regarding a medication prescribed to find plaintiff not disabled.

As noted above, although there is no medical opinion evidence directly supporting the ALJ's physical RFC findings, an

exact correspondence is not required between a medical opinion
and the RFC.  An ALJ can rely on all the record evidence,
including but not limited to medical opinions when making her
RFC findings.  The ALJ discussed the medical evidence in some
detail, and no medical evidence conflicts with or contradicts
the ALJ's physical RFC findings.  The court therefore finds that
substantial evidence supports the ALJ's physical RFC findings.

## VI.  Did the ALJ err in her analysis of plaintiff's subjective complaints?

Credibility determinations are peculiarly the province of
the finder of fact, and a court will not upset such
determinations when supported by substantial evidence.  However,
findings as to credibility should be closely and affirmatively
linked to substantial evidence and not just a conclusion in the
guise of findings.  Kepler v. Chater, 68 F.3d 387, 391 (10th
Cir. 1995).  Furthermore, the ALJ cannot ignore evidence
favorable to the plaintiff.  Owen v. Chater, 913 F. Supp. 1413,
1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require
a formalistic factor-by-factor recitation of the evidence.  So
long as the ALJ sets forth the specific evidence he relies on in
evaluating the claimant's credibility, the ALJ will be deemed to
have satisfied the requirements set forth in Kepler.  White v.
Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel,

206 F.3d 1368, 1372 (10th Cir. 2000).  Furthermore, the ALJ need

not discuss every relevant factor in evaluating pain testimony.

Bates v. Barnhart, 222 F. Supp.2d 1252, 1260 (D. Kan. 2002).  An

ALJ must therefore explain and support with substantial evidence

which part(s) of claimant's testimony he did not believe and

why.  McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir.

2002).  It is error for the ALJ to use standard boilerplate

language which fails to set forth the specific evidence the ALJ

considered in determining that a claimant's complaints were not

credible.  Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir.

2004).  On the other hand, an ALJ's credibility determination

which does not rest on mere boilerplate language, but which is

linked to specific findings of fact fairly derived from the

record, will be affirmed by the court.  White, 287 F.3d at 909-

910.

     The court finds no clear error by the ALJ in her

credibility analysis.  The ALJ discussed in some detail

plaintiff's testimony and statements, work activities

questionnaires, the medical record, and the medical opinion

evidence regarding plaintiff's mental limitations (R. at 20-25).

The ALJ reasonably relied on the medical evidence and the

medical opinion evidence to find that plaintiff was not fully

credible.  The court will not reweigh the evidence.  The balance

of the ALJ's credibility analysis was supported by substantial

evidence in the record.  <u>See</u> <u>Barnum v. Barnhart</u>, 385 F.3d 1268,
1274 (10th Cir. 2004)(while the court had some concerns about the
ALJ's reliance on plaintiff's alleged failure to follow a weight
loss program and her performance of certain household chores,
the court concluded that the balance of the ALJ's credibility
analysis was supported by substantial evidence in the record).

IT IS THEREFORE ORDERED that the judgment of the
Commissioner is affirmed pursuant to sentence four of 42 U.S.C.
§ 405(g).

Dated this 26th day of February 2018, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge